**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: October 12 2017**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 16-33111 |
| | ) | |
| Leslie Simon de Montfort, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 17-3009 |
| | ) | |
| Edward Nyman, et al., | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Leslie Simon de Montfort, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER**

This adversary proceeding is before the court for decision after an evidentiary hearing on Plaintiffs' Motion for Default Judgment [Doc. # 17] on Plaintiffs' Amended Complaint to Determine and Prevent Dischargeability of a Debt" ("Amended Complaint") [Doc. #7]. Defendant Leslie Simon De Montfort ("Debtor") is the debtor in the underlying Chapter 7 Case No. 16-33111 in this court. Defendant Ohio Backyard Living, LLC, ("the LLC") is a limited liability company that Debtor owns and for which she is the statutory agent. [Pl. Ex 9, p. 3]. Plaintiffs Edward Nyman and Amy Nyman are individual creditors of Defendant.

**PROCEDURAL BACKGROUND**

On October 3, 2016, Debtor filed her Chapter 7 bankruptcy petition. [Case No. 16-33111]. After concluding the meeting of creditors, the Chapter 7 Trustee filed a notice of assets and request for notice to creditors. [*Id.*, Doc. # 36].

On March 9, 2017, Plaintiffs filed an Amended Complaint against Debtor and the LLC, alleging claims for fraud, violation of the Ohio Consumer Sales Practices Act, negligence/failure to construct in a workmanlike manner and breach of warranty.[1] [Doc. # 7]. Plaintiffs seek the following relief: (1) damages in an amount in excess of $25,000.00 "to repair the damages to their home caused by Debtor/Defendants, and to have the work for which Debtor/Defendants were engaged, repaired and replaced and/or performed in a workmanlike manner", (2) punitive damages in an amount in excess of $25,000.00, (3) treble damages for violation of Ohio Revised Code § 1345, and (4) that the debt owed to Plaintiffs be found to be nondischargeable pursuant to 11 U.S.C. § 523.  [*Id.*, pp. 8-9].

On March 10, 2017, the Clerk issued an alias summons and notice of pre-trial conference. [Doc. # 9]. The return on service [Doc. # 10] shows that the summons and the originally filed Complaint were timely and properly served on Debtor. The return on service does not show that the LLC was separately served. The summons required an answer or other response to the Complaint to be filed by April 10, 2017.

As was noticed in the alias summons, the court held a pre-trial scheduling conference on the Complaint on April 13, 2017. Attorney for Plaintiff appeared in person. There was no appearance by or on behalf of either Defendant at the pretrial conference and no answer or other response to the Complaint had been filed and served. The Clerk entered Defendants' default on the Complaint on April 14, 2017, [Doc. # 13], and Plaintiffs filed their Motion for Default Judgment ("Motion") [Doc. # 17] on April 21, 2017.

On August 3, 2017, the court held an evidentiary hearing on the Motion. In its hearing order, and pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Rule 7055 of the Federal Rules of Bankruptcy Procedure, the court stated that it would require at the default hearing evidence on the merits to support (1) any averments necessary to establish a cause of action that are pleaded on information and belief, (2) averments regarding alleged misrepresentations made by Debtor and Plaintiffs' justifiable reliance

---

[1] Plaintiffs' Complaint also includes causes of action for piercing the corporate veil and punitive damages. However, "a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Dalton v. Animas Corp.*, 913 F.Supp.2d 370, 378 (W.D. Ky. 2012); *Hicks v. NLO, Inc.*, 631 F. Supp. 1207, 1211-12 (S.D. Ohio 1986). Likewise. there is no separate cause of action for piercing the corporate veil; rather it is a means of imposing liability of a corporation on its owners. *See Spartan Tube and Steel, Inc. v. Himmelspach (In re RCS Engineered Prods. Co., Inc.)*' 102 F.3d 223, 226 (6th Cir. 1996) ("an alter ego claim is not by itself a cause of action").

on those representations, (3) Debtor's intent to deceive, defraud, or to injure Plaintiffs or their property; and (4) any claimed damages. [Doc. # 18 (*citing AmeriCash Loans, LLC v. Marquardt (In re Marquardt)*, 561 B.R. 715, 721 (Bankr. C.D. Ill. 2016); *State of Indiana v. Jewell (In re Jewell),* 554 B.R. 169, 172-74 (Bankr. N.D. Ind. 2016); *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007)(on default a defendant is not held to admit allegations that are not well-pleaded or conclusions of law; allegations that merely parrot statutory language are simply legal conclusions)]. Debtor, proceeding pro se, Plaintiff Edward Nyman and Plaintiffs' attorney appeared in person at the hearing.

For the reasons that follow, Plaintiffs' Motion will be granted only as to Plaintiff Edward Nyman's fraud, Ohio Consumer Sales Practices Act, and nondischargeability claims and will otherwise be denied.

## FACTS

### I. The Amended Complaint

Plaintiffs aver in their Amended Complaint that, in researching a contractor to perform certain improvements to the backyard at their home, they discovered the website for "Ohio Backyard Living." [Doc. # 7, ¶¶ 7-8]. They aver that Debtor and/or Ohio Backyard Living made multiple representations on its website, including the following: "We are the area's leading contractor, having installed over 550 outdoor living hardscape construction projects since 1996 with over 225,000 sq. ft. of paver and stone surfaces and over 50,000 lineal ft of retaining walls. We have completed multiple projects over $100,000 and our largest project was nearly $300,000." [*Id.* at 8 and attached Ex. A]. They aver that Ohio Backyard Living represented that all work was guaranteed with a one year warranty and that it was an authorized dealer for "Unilock" patio products. [*Id.* at 8]. Plaintiffs aver that based "in large part" upon the representations made by Debtor on the Ohio Backyard Living website, they "entered into a contract with Debtor/Defendant to perform the various improvements," which included installation of a patio with Unilock pavers, a gas fire pit and an 8 foot by 8 foot concrete slab. [*Id.* at 9 and attached Ex. B]. They further aver that "Debtor/Defendant had little to no experience in the landscape/hardscape business," and did not have the experience, expertise and credentials represented on the website and that the misrepresentations were made "with a conscious disregard for the rights of Plaintiffs and/or with the intent to deceive." [*Id.* at 11, 13, 45]. Upon information and belief, Plaintiffs aver that Debtor owned the LLC, which she created approximately four months prior to contracting with them. [*Id.* at 3, 10].

In addition, Plaintiffs aver that their "premises were damaged by the work performed by Defendant/Debtor De Montfort and/or her agents," including damage to the foundation, siding, drainage tiles and irrigation lines of their home, that the Unilock pavers were not installed in a workmanlike manner,

3

and that the work has to be completely redone. [*Id.* at 16-17, 19-20]. Plaintiffs aver that they have paid Debtor/Defendant approximately $12,000.00 of the total contract price of $17,125.000. [*Id.* at 9].

## II. The Evidentiary Hearing

In addition to the well-pleaded factual allegations of the Complaint, Plaintiffs presented documentary evidence and the testimony of Plaintiff Edward Nyman ("Plaintiff"), Lindsay Murphy, owner of Dream Green Landscape and Design ("Dream Green"), and Debtor. With respect to damages, Debtor offered her own testimony as well as that of Farid Khalil.

Plaintiff Edward Nyman ("Plaintiff") testified that he searched the internet for a local contractor to do certain work in Plaintiffs' backyard, which would include a new patio, fire pit and walkway. In doing so, he found the LLC's website at ohiobackyardliving.com. [Pl. Ex. 1]. The website describes the company as "northwest Ohio & Southeast Michigan's Premier Outdoor Living Hardscape - Construction & Masonry Contractor."[2] [*Id.*]. Under "Company Background and Accomplishments," it states:

> We are the area's leading contractor, having installed over 550 outdoor living hardscape construction projects since 1996 with over 225,000 sq. ft. of paver and stone surfaces and over 50,000 lineal ft. of retaining walls. We have completed multiple projects over $100,000 and our largest project was nearly $300,000.
> . . . .
> Ohio Backyard Living was founded in 1996 as a full service landscape and irrigation company. Since then we have become the regions largest hardscape construction company.

[*Id.*]. The website also states that the LLC has "worked in over 100 developments in the area" and that all work "is guaranteed with a year warranty." [*Id.*].

Plaintiff testified that, "when looking at websites," he found outdoorliving-design.com. [*see* Pl. Ex. 2]. The website shows photographs of projects and indicates that Outdoor Living had received Unilock awards and offers lifetime warranties. [*Id.*]. Plaintiff testified that the company was "somehow connected" to Ohio Backyard Living but he could not remember how it was connected. When asked if he found the site by clicking on the "home" button on the LLC's website, he answered, "I believe so." However, when called by Plaintiffs at the hearing, Debtor credibly testified that Outdoor Living is not connected to her and that the LLC's website makes no mention of awards. The company name at the website is clearly Outdoor Living, not Ohio Backyard Living. It has a different web address in the browser's address bar and offers a lifetime warranty rather than the one year warranty offered on the LLC's website. The court finds Plaintiff's explanation of any connection of Outdoor Living to the LLC to be unpersuasive.

---

[2] Plaintiffs' expert, Lindsay Murphy of Dream Green, distinguished between "hardscape" and "landscape." She explained that hardscape refers to permanent structures while landscaping can be removed.

Plaintiff testified that the representations on the LLC's website that it had been in business since 1996, the number of projects it states the LLC has completed, including six figure projects, convinced him that the LLC could manage their smaller project well. He further testified that when Plaintiffs met with Debtor and her boyfriend, Farid Khalil, in late Spring or early Summer 2016, they brought samples of Unilock pavers, a Unilock catalog and told Plaintiffs that they had been installing Unilock patios for many years and were authorized installers for Unilock. Plaintiff testified that he was impressed with their sales pitch. The record is silent, however, as to whether Plaintiff Amy Nyman ever viewed the LLC's website and is silent as to any reliance by her on any representation.

On May 10, 2016, Plaintiff signed a contract with Ohio Backyard Living that included it removing the concrete patio and installing a Unilock patio, fire pit and concrete slab for a hot tub for a total price of $17,125.00, itemized as follows:

| | |
|---|---|
| Patio/walkway - Mahogany Holland Stone w/ Border of Coffee Creek Brussels Block | $11,465 |
| Landing & 1 Step Side Door/Long Step | $960 |
| Concrete Slab 8' x 8' | $600 |
| Drain & Pop-ups | $350 |
| 32" Fire pit with Brussels Block w/ gas line and components | $2,225 |
| Dumpster, Tearing up & disposing of concrete patio, grading and basing | $1,000 |
| 411's, screening, polysand, edging & seeding the yard | $525 |

[*See* Pl. Ex. 3]. The contract required twenty percent to be paid at signing, fifty percent when the project was started, twenty percent when half completed, and ten percent on completion. [*Id.*]. Although the contract states the "Client Name" as "Ed & Amy Nyman," it was signed only by Plaintiff Edward Nyman.

Notwithstanding the representations on the LLC's website, the LLC had only been in existence for approximately three months, having been formed by Debtor in March 2016, [*see* Pl. Ex. 9], and the LLC had only completed three projects before Plaintiff's project, none of which were projects over $100,000. There is no dispute that it was not the largest hardscape construction company and had not worked in over 100 developments in the area. Debtor testified that Khalil had been in the business and "had done those

5

jobs." Khalil had formerly been a partner in a business known as Exterior Living, which he testified was closed because the "partners did not see eye to eye." According to Debtor, she "took over" the business when she formed the LLC. Debtor testified that she used the information from Exterior Living's website in creating the LLC's website because Khalil "was part of the company."

Debtor also testified that when she and Khalil met with Plaintiffs, they had a lengthy discussion, during which she explained that she was a dietician for twenty years and had just met Khalil a couple of years before, that he was the expert in the business and was the one doing the work for all those years. Debtor testified that her involvement in the LLC was "running the company."

While it is true that the LLC is not a certified installer of Unilock pavers, the court credits Debtor's testimony that it was not until problems arose with the backyard project and Plaintiff had talked to a representative of Unilock that the issue of being an authorized installer came up. Debtor testified that when Plaintiff called and asked her if the LLC was an authorized installer, she responded that she did not know and she called Unilock to inquire regarding what is required to be "authorized." Lindsay Murphy, owner of Dream Green, a business that also does hardscape projects, testified that becoming a certified installer of Unilock is a time consuming endeavor that her company has chosen not to pursue and that certification is not required before a company can install Unilock pavers.

Khalil and individuals who had previously worked for him began work at Plaintiff's home in late July 2016. Plaintiff testified that before the work began, Plaintiffs had a moisture issue in their basement due to a crack in the wall and in the drainage tile that resulted in water trickling in when it rained. During his initial conversation with Debtor and Khalil, Khalil told him that he needed to get a foundation expert to fix the wall. Plaintiff did not do so before the hardscape project began. During the removal of the existing patio, workers using a bobcat lifted a large piece of concrete, which then hit the ground and bounced against the side of the house, ripping some of the siding off the house, pushing through insulation board and knocking things off the wall on the inside of the house. The court credits Plaintiff's testimony that this caused the crack in the basement wall to become larger and resulted in a larger puddle of water in the basement after an extensive rain.

Work on the hardscape project progressed. The concrete slab was poured and the subsurface for the Unilock pavers and some of the pavers were installed . However, Plaintiff testified that after the extensive rain, the pavers were "so wavy" that he had Lindsay Murphy of Dream Green inspect the project. The court credits her testimony that the patio was not properly installed and that the wrong type of stone was used in the subsurface of the pavers, resulting in water drainage under the pavers being impeded. According to

6

Murphy, the LLC did not comply with the industry standard for subsurfaces for paving blocks as is set forth in the Unilock Tech Guide, which she testified is provided by Unilock to anyone installing their pavers.

Other issues with the project include the fact that the concrete slab was improperly sloped toward the house and a drainage tile was installed uphill such that water would not drain through it. In addition, irrigation lines had been dug up and an electrical wire had been severed, which, according to Plaintiff, shorted out the module that controls water going through the irrigation lines. The court credits Khalil's testimony that, because the patio to be installed was larger than the existing patio, he had to dig up some of the irrigation lines, which would be reconnected when the project was completed.

The court also credits the testimony of both Debtor and Khalil that they told Plaintiff that they were willing to repair the patio, the siding on the house, and the severed wire. However, Plaintiff was justifiably dissatisfied with the work being done, and he informed Debtor that he wanted the LLC to do no further work at his home. By that time, Plaintiff had paid the LLC $11,987.50.

Thereafter, in October 2016, Plaintiff hired E & K Contractors to make necessary repairs to address the water issues in their basement. The repairs included removing the concrete slab, fixing the crack in the basement wall and applying black tar to the outside of the basement wall, backfilling the area excavated with stone and grading the area to slope away from the house, all at a cost of $5,286.00, which amount is not otherwise itemized. [Pl. Ex. 8].

In May 2017, Plaintiff contracted with Howard Lawn & Landscaping Service LLC to properly install the patio, a platform for the hot tub and a fire pit at a cost of $12,400.00, which amount Plaintiff testified has been paid in full. [Pl. Ex. 6]. In completing the work, Howard Lawn & Landscaping Service LLC was able to reuse the Unilock pavers left there by the LLC. After the new patio was completed, Plaintiff hired Carefree Irrigation, Inc., to reconnect the irrigation system, run a new wire and replace the controller for the system at a total cost of $1,600.00. [*See* Pl. Ex. 7].

## DISCUSSION

### I. Jurisdiction

The court must initially determine its jurisdiction and authority to hear and determine the claims asserted in this proceeding. *See Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010) (stating that federal courts have "an independent obligation to investigate and police the boundaries of our own jurisdiction"). "The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." *Resorts Int'l Fin., Inc. v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004) (quoting *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d

296, 303 (5th Cir. 2002)); *Refrigerant Reclamation Corp. of Am. v. Todack (In re Refrigerant Reclamation Corp. of Am.)*, 186 B.R. 78, 80 (Bankr. M.D. Tenn. 1995). Section 1334 provides that the district court has "exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 11 U.S.C. § 1334(a) and (b). Because these categories "operate conjunctively to form the scope of jurisdiction," to determine whether a matter is within the bankruptcy court's jurisdiction, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Michigan Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir. 1991). The district courts, including the United States District Court for the Northern District of Ohio, routinely refer this jurisdiction over bankruptcy cases and proceedings to the bankruptcy courts. *See* 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

The Sixth Circuit has held that a case is related to a bankruptcy case "if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Wolverine Radio Co.*, 930 F.2d at 1142. Plaintiffs have failed to demonstrate that the outcome of this proceeding, to the extent brought against the LLC, would have any effect on the administration of Debtor's bankruptcy estate.[3] The LLC will therefore be dismissed from this proceeding for lack of subject matter jurisdiction.

In addition to the state law claims against Debtor alleged in Plaintiffs' Complaint, which constitute claims against the bankruptcy estate,[4] the court construes the Complaint as also alleging a nondischargeability claim under 11 U.S.C. § 523. These claims are at least related to Debtor's underlying Chapter 7 bankruptcy case, while the nondischargeability claim arises under title 11. The district court therefore has jurisdiction over these claims under 28 U.S.C. § 1334(b), which jurisdiction has been referred to this court under 28 U.S.C. § 157(a) and General Order 2012-7. Moreover, proceedings to determine dischargeability of a particular debt and proceedings involving allowance or disallowance of claims are core proceedings that this court may hear and determine under 28 U.S.C. § 157(b)(1) and § 157(b)(2)(B) and (I).

## II. Motion for Default Judgment

The court finds that notice, including service of the summons and Complaint and the Amended

---

[3] At the hearing, Plaintiffs' counsel stated that the LLC was included as a defendant because it is listed as a d/b/a/ on Debtor's bankruptcy petition and Plaintiffs were thus unsure of the legal status of Ohio Backyard Living.

[4] Plaintiffs have also filed a proof of claim in the amount of $16,725.00. [Claim No. 14].

8

Complaint pursuant to Fed. R. Bankr. P. 7004(b)(9), has been duly and properly served upon Debtor at all stages of this adversary proceeding and in the underlying Chapter 7 case. The court further finds that Debtor has failed to plead or otherwise defend this action with respect to liability as required by the applicable rules of procedure.

Debtor's failure to answer the Complaint does not, standing alone, entitle Plaintiffs to a default judgment as a matter of right. *Ohio Dept. of Job and Family Servs. v. Urbina (In re Urbina)*, 519 B.R. 694, 697 (Bankr. N.D. Ohio 2014); *American Express Centurion Bank v. Truong (In re Truong),* 271 B.R. 738, 742 (Bankr. D. Conn. 2002); *Columbiana Cty. Sch. Emps. Credit Union, Inc. v. Cook (In re Cook)*, 2006 Bankr. LEXIS 446 at *9-10, 2006 WL 908600, *3 (B.A.P. 6th Cir. Apr. 3, 2006). In determining whether a default judgment is appropriate, "the court should [accept] as true all of the factual allegations of the complaint, except those relating to damages" and afford plaintiff "all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Yet the court must still decide whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Smith v. Household Fin. Realty Corp. of New York (In re Smith)*, 262 B.R. 594, 597 (Bankr. E.D.N.Y. 2001). The court may conduct a hearing requiring proof of the facts that must be established in order to determine a defendant's liability. *See* Fed. R. Civ. P. 55(b)(2)(C). Where the claim sounds in fraud, the court must evaluate the evidence presented to assure that the plaintiff has presented a prima facie case. *In re Truong*, 271 B.R. at 742.

The court finds that the well-pleaded averments to the extent alleged by Plaintiff, as substantiated by testimony and evidence offered at the hearing on Plaintiffs' Motion as discussed below, constitute valid causes of action under § 523(a)(2)(A) and state law claims of fraud and violation of the Ohio Consumer Sales Practices Act and deems them as true as a result of Debtor's default.[5]

Plaintiffs have, however, failed to substantiate the averments in the complaint with respect to Plaintiff Amy Nyman. She was not a party to the contract with the LLC. To the extent that she even has standing to pursue the claims, there is no evidence that she ever saw the misrepresentations on the LLC's website, let alone relied on those representations. Plaintiffs' Motion for Default Judgment will be granted only as to Plaintiff Edward Nyman and will be denied as to Plaintiff Amy Nyman.

---

[5] At the hearing, Plaintiffs proceeded only as to their state law claims of fraud and violation of the Ohio Consumer Sales Practices Act and their nondischargeability claim, and not the negligence and breach of warranty claims, which the court construes as having been abandoned.

### A. Fraudulent Misrepresentation

Although Plaintiffs do not set forth a specific subsection of § 523 in their prayer for relief, their fraud claim alleges certain false representations made by Debtor. Because the elements of a common law fraud claim under Ohio law are "virtually identical" to those under § 523(a)(2)(A), *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 389 (B.A.P. 6th Cir. 1998), as stated above, the court construes the Complaint as alleging both a common law fraud claim and a dischargeability claim under § 523(a)(2)(A). Under § 523(a)(2)(A), a debt is excepted from discharge to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

In order to except a debt from discharge under § 523(a)(2)(A) due to false pretense or false representation, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money or services through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998). A debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand. *Id.* at 281-82. A finding of fraudulent intent may be inferred on the basis of circumstantial evidence or from the debtor's "course of conduct," as direct proof of intent will rarely be available. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999). "If there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor." *Oliver v. Zimmerman (In re Zimmerman)*, 567 B.R. 521, 526 (Bankr. N.D. Ohio 2017); *Buckeye Retirement Co., LLC v. Kakde (In re Kakde)* 382 B.R. 411, 427 (Bankr. S.D. Ohio 2008).

In this case, material misrepresentations were made by Debtor on the LLC's website. Courts have long distinguished between statements utilizing opinion and exaggeration that constitute mere puffery and factual statements that constitute fraudulent misrepresentations. The Supreme Court has explained that puffery is "the mere exaggeration of the qualities which the article has; but when a proposed seller goes beyond that, assigns to the article qualities which it does not possess, does not simply magnify in opinion the advantages which it has, but invents advantages and falsely asserts their existence, he transcends the limits of 'puffing' and engages in false representations and pretenses. *United States v. New S. Farm & Home Co.*, 241 U.S. 64, 71 (1916); *see also Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 Fed. Appx. 558, 563-64 (6th Cir. 2013) (stating that puffery "may nevertheless be intertwined with assertions

of past or present objective fact, and thus form the basis for fraud"); *Caella v. Webb,* 883 F.2d 805, 808 (9th Cir. 1989)("What might be innocuous 'puffery' or mere statement of opinion standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation."); *Scritchfield v. Paolo*, 274 F. Supp. 2d 163, 175–76 (D.R.I. 2003) (stressing that "a company's statements that it is 'premier,' 'dominant,' or 'leading' must not be assessed in a vacuum (i.e., by plucking the statements out of their context to determine whether the words, taken per se, are sufficiently 'vague' so as to constitute puffery").

While Debtor's description of the LLC on the website as a "premier" hardscape contractor and the area's "leading" contractor, in isolation, may constitute mere puffery, she included a number of factual statements, as discussed above, that she knew were false and would lead a reasonable person to believe that description. The court finds that, in doing so, it was Debtor's intent to deceive its customers, including Plaintiffs, regarding the qualifications and experience of her newly formed LLC. The court further finds that Plaintiff reasonably relied on the representations on the LLC's website in concluding that the LLC was well qualified to handle the hardscape project that Plaintiff had contemplated and in hiring the LLC to perform such work.

Although according to Debtor, she told Plaintiff that she was a dietician for twenty years, that she had met Khalil a couple of years ago, and that Khalil was the expert and completed the hardscape projects described on the LLC's website, this information did not correct the misrepresentations on the website or diminish the reasonableness of Plaintiff's reliance on them. She did not tell Plaintiff that the work was done by another company in which Khalil was a partner and, given the quality of work done at Plaintiffs' home, the court finds more likely than not, was not entirely done by him.

Plaintiff's reliance on Debtor's misrepresentations was the proximate cause of damages incurred by him. His damages consist of the difference between what he had agreed to pay Debtor for the hardscape project at their home, $17,125.00, and the amount he had to pay to have the project completed in a workmanlike manner. Plaintiff has already paid Debtor $11,987.50. To have the patio, the platform for the hot tub and a fire pit properly installed by Howard Lawn & Landscaping Service LLC, he paid an additional $12,400.00. And to have the irrigation system reconnected and the severed wire and the controller replaced by Carefree Irrigation, Inc., he paid $1,600.00. Thus, the total cost to complete the hardscape project was $25,987.50 ($11,987.50 + $12,400.00 + $1,600.00).

Plaintiff did not meet his burden of proving that his damages include $5,286.00 paid to E & K Contractors for removing the defective concrete slab installed by the LLC and repairing the crack in the

11

basement wall and applying black tar to the outside of the wall. *See Austin v. Chukwuani*, 2017-Ohio-106, ¶ 21, 80 N.E.3d 1199, 1205 (Ohio App. 2017) ("plaintiff must show entitlement to damages in an amount ascertainable with reasonable certainty"). While the crack in Plaintiffs' basement wall was larger after the slab of concrete hit it, water was already seeping through in the wall, albeit to a lesser degree, as a result of the smaller crack in the wall and a crack in a drainage tile that were present before the LLC began any work. The record is silent as to any increased cost incurred that resulted from the wall being hit by the concrete. The record is also silent as to the cost of removing the concrete slab as the E & K Contractors' statement does not itemize the charges for the work done.

The difference between the total cost to Plaintiff to properly complete the hardscape project ($25,987.50) and the original agreement with the LLC ($17,125.00) is $8,862.50, which amount the court finds to be Plaintiff's actual damages caused by Debtor's fraudulent misrepresentations. In other words, Plaintiff has shown that he has paid $25,987.50 for a project that should have cost only $17,125.00, the difference being the resulting damages.

In their Complaint, Plaintiffs also seek punitive damages. Under Ohio law, punitive damages may be awarded in cases alleging fraud where the plaintiff establishes not only the elements of the tort itself but also shows by clear and convincing evidence that the fraud is aggravated by the existence of malice or ill will or that the wrongdoing is particularly gross or egregious. *Levy v. Seiber*, 57 N.E.3d 331, 343 (Ohio App. 2016); Ohio Rev. Code § 2315.21(C)(1) and (D)(4). "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. " *Levy*, 57 N.E.3d at 343 (citing *Preston v. Murty*, 32 Ohio St.3d 334, 335 (1987). Plaintiff has not shown the requisite malice or egregious fraud required for an award of punitive damages.

Finally, the preamble to § 523(a)(2)(A) states that the exception to discharge applies to any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by" the specified misconduct. Although Plaintiff's contract was with the LLC, the United States Court of Appeals for the Sixth Circuit has held that a debt owed by an entity to a creditor may fall within § 523(a) discharge exceptions by proving some direct or indirect tangible or intangible financial benefit to the individual debtor. *See Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172 (6th Cir. 1996) ("We therefore reject debtor's implication that a debt is nondischargeable under section 523(a)(2)(A) only when the creditor proves that the debtor directly and personally received every dollar lost by the creditor."); *cf. Cohen v. De*

*La Cruz*, 523 U.S. 213, 218 (1998)("all liability arising from fraud" is nondischargeable). In *In re Brady*, a creditor successfully established a benefit to the debtor with proof that a corporation he controlled received $40,000 of the creditor's money. A third party may thus be the direct beneficiary of a fraud, but if a debtor is the perpetrator and obtains at least some indirect benefit, the debt owed to the injured party may be found to be nondischargeable. *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760–61 (Bankr. E.D. Tenn 2003). Similarly, "Ohio law has long held that corporate officers may be held personally liable for actions of the company if the officers take part in the commission of the act or if they specifically directed the particular act to be done, or participated or cooperated therein." *Hamerly v. Salupo (In re Salupo)*, 386 B.R. 659, 667 (Bankr. N.D. Ohio 2008) (quoting *State ex rel. Fisher v. Am. Courts, Inc.*, 96 Ohio App.3d 297, 300 (1994)). Debtor, as the sole member of the LLC, directed or participated in the fraudulent misrepresentations in this case such that, under Ohio law, she is personally liable to Plaintiff for damages resulting therefrom. As the sole member of the LLC, Debtor also obtained at least an indirect benefit such that the debt owed to Plaintiff is nondischargeable.

### B. Violation of the Ohio Consumer Sales Practices Act

The Ohio Consumer Sales Practices Act ("CSPA") provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). Such an act or practice by a supplier violates the CSPA "whether it occurs before, during, or after the transaction." *Id.* A violation of § 1345.02 "does not require either intent or knowledge on the part of the alleged perpetrator; rather, it is sufficient that the conduct complained of has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts." *Funk v. Montgomery AMC/Jeep/Renault*, 66 Ohio App. 3d 815, 823 (1990); *accord Walker v. Dominion Homes, Inc.*, 164 Ohio App. 3d 385, 394 (2005).

The CSPA defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service . . . to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A). "Supplier" is defined as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." Ohio Rev. Code § 1345(C). The party bringing a claim under the CSPA has the burden of proving a violation of the CSPA by a preponderance of the evidence. *Robinson v. McDougal,* 62 Oho App. 3d 253, 262 (1988); *Nye v. White-Rhoades,* No. 9-15-04, 2015 WL 5320271, *6, 2015 Ohio App. LEXIS 3621, *14 (Ohio App. Sept. 14, 2015).

13

In this case, the hardscape project at Plaintiffs' home was a consumer transaction within the meaning of the CSPA. It involved the sale of Unilock pavers and other materials to complete the project as well as the service of installing the patio, concrete pad and firepit in Plaintiffs' backyard for primarily personal, family or household purposes. Debtor is also a supplier within the meaning of the CSPA. Although Plaintiff's contract was with the LLC, Debtor is a person who was engaged in the business of effecting and soliciting the consumer transaction. *See Luckoski v. Allstate Ins. Co.*, 2013-Ohio-5460, ¶ 36, 5 N.E.3d 73, 85 (2013) (explaining that corporate officer who "personally took part in the commission of, or cooperated and directly engaged in, violations of the [Ohio CSPA]" can be held liable for damages resulting from his violations).

As discussed above, Plaintiff has provided evidence of fraudulent misrepresentations made by Debtor in soliciting Plaintiff's business that induced in Plaintiff's mind a belief regarding the LLC's qualifications that was not in accord with the facts. Debtor's fraudulent misrepresentations are a violation of § 1345.02(A).

Under the CSPA, a consumer may recover his actual economic damages and up to $5,000 in noneconomic damages. Ohio Rev. Code § 1345.09(A). Plaintiff provided evidence only of economic damages, which are the same damages discussed with respect to Plaintiff's fraud and § 523(a)(2)(A) claims and which the court has determined total $8,862.50.

Under the CSPA, a consumer may also recover three times the amount of the consumer's actual economic damages when the violation was either (1) "an act or practice declared to be deceptive or unconscionable by rule adopted under [Ohio Revised Code § 1345.05(B)(2)[6]] before the consumer transaction on which the action is based" or (2) an act or practice determined by an Ohio court to violate section 1345.02, 1345.03, or 1345.031 of the Ohio Revised Code "and committed after the decision containing the determination has been made available for public inspection under [§ 1345.05(A)(3)[7]]. Ohio

---

[6] Ohio Revised Code § 1345.05(B)(2) provides that the attorney general may "[a]dopt, amend, and repeal substantive rules defining with reasonable specificity acts or practices that violate sections 1345.02, 1345.03, and 1345.031 of the Revised Code. "

[7] Ohio Revised Code § 1345.05(A)(3) provides that the attorney general shall:

> Make available for public inspection all rules and all other written statements of policy or interpretations adopted or used by the attorney general in the discharge of the attorney general's functions, together with all judgments, including supporting opinions, by courts of this state that determine the rights of the parties and concerning which appellate remedies have been exhausted, or lost by the expiration of the time for appeal, determining that

Rev. Code § 1345.09(B). Before Debtor made the misrepresentations at issue in this case, the Ohio Attorney General had adopted a rule stating as follows:

> It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:
>
> (A) Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact. . . .

Ohio Admin. Code 109:4-3-10. The court concludes, therefore, that Plaintiff's actual economic damages should be trebled to equal $26,587.50.

In addition, at the hearing, Plaintiff sought an award of his attorney's fees. Under the CSPA, the court has discretion to award the prevailing party a reasonable attorney's fee under specific circumstances. *See* Ohio Rev. Code § 1345.09(F); *Charvat v. Ryan,* 116 Ohio St. 3d 394, 401 (2007) (stating that, where the requisite circumstances are shown, the court has the discretion to determine whether attorney fees are warranted under the CSPA). However, "a default judgment must not differ in kind from . . . what is demanded in the pleadings." Fed. R. Civ. P. 54(c); Fed. R. Bankr. P. 7054. In the context of a default judgment, "the familiar tenet that a party should be given the relief to which it is entitled whether or not it has prayed for that relief in its pleadings...does not obtain." *Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 40 (1st Cir. 2012). The purpose of the rule is to allow a defending party to make an informed decision based on the relief requested in the original pleading as to "whether to expend the time, effort, and money necessary to defend the action." 10 Charles Alan Wright, et al., Fed. Prac. & Proc. § 2663 (3d ed. 2017). Plaintiff's Complaint seeks only compensatory damages, treble damages, and punitive damages. The Complaint makes no mention of attorney fees. Being different in kind from what is demanded in the Complaint, the court may not award such relief on default.

As Debtor's fraudulent misrepresentations are the basis of Plaintiff's claim for violation of the CSPA, and the total amount of damages arising from such misrepresentations is $26,587.50, that entire amount is nondischargeable under § 523(a)(2)(A). *See Cohen v. de la Cruz,* 523 U.S. 213, 221 (1998) (finding that § 523(a)(2)(A) prohibits the discharge of any liability arising from a debtor's fraudulent

---

specific acts or practices violate section 1345.02, 1345.03, or 1345.031 of the Revised Code. . . .

15

acquisition of money, property, etc., including an award of treble damages").

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiffs' Motion for Default Judgment [Doc. # 17] be, and hereby is, **GRANTED** only as to Plaintiff Edward Nyman's claims for fraud, violation of the Ohio Consumer Sales Practices Act and nondischargeability under 11 U.S.C. § 523(a)(2)(A) and is otherwise **DENIED.** The court will enter a separate, final judgment in accordance with this Memorandum of Decision and Order.

###